UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MID MICHIGAN AREA CABLE AND
TELECOMMUNICATIONS
CONSORTIUM, et al,

            Plaintiffs,

v.

            Case Number 09-14621-BC
            Honorable Thomas L. Ludington

CC MICHIGAN LLC, CC VIII
OPERATING LLC,

            Defendants.
_____ /

**ORDER DENYING PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND SCHEDULING STATUS CONFERENCE**

Now before the Court is Plaintiffs' motion for a temporary restraining order ("TRO") [Dkt. # 2], filed on November 25, 2009, the same day as a complaint and a motion for a preliminary injunction [Dkt. # 3]. Plaintiffs are the Mid Michigan Area Cable and Telecommunications Consortium and members of the consortium, including the City of Mount Pleasant, the City of Ithaca, the City of Alma, the City of St. Louis, the City of Clare, the City of Harrison, the City of Evart, the Village of Breckenridge, the Village of Arcada, the Village of Shepherd, the Charter Township of Pine River, the Charter Township of Union, and the City of Traverse City (collectively, "the municipalities"). The municipalities' claims against Defendants CC Michigan LLC and CC VIII Operating LLC (both d/b/a Charter Communications) ("Charter") arise from Charter's imminent implementation on December 1, 2009, of a plan to designate different channels than have previously been used for public, educational, and governmental ("PEG") programming.

Generally, under the Cable Television Consumer Protection and Competition Act of 1992

("Cable Act"), 47 U.S.C. § 521 eq seq., franchise agreements between local government franchising authorities and cable operators may require cable operators to designate channel capacity for PEG use. Here, Charter operates pursuant to franchise agreements with each of the municipalities. In their motion for a TRO, the municipalities contend that their franchise agreements prevent Charter from relocating PEG channels without authorization from them, that the municipalities will be harmed by relocation of the channels because the channels that Charter intends to designate for PEG use are subject to significant interference from FM radio stations, and that the municipalities will be further harmed because of the efforts that they have made to "brand" the channels currently designated for PEG use. On November 29, 2009, Charter filed a response [Dkt. # 6] to the municipalities' motions for a TRO and preliminary injunction. On today's date, the municipalities filed a reply. [Dkt. # 10].

A preliminary injunction is an extraordinary remedy, and only granted if the movant carries his or her burden of proving that the circumstances clearly demand it. *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000). In determining whether to grant a TRO, the Court considers the following factors:

> (1) whether the movant has a strong likelihood of success on the merits, (2) whether the movant would suffer irreparable injury absent a [TRO], (3) whether granting the [TRO] would cause substantial harm to others, and (4) whether the public interest would be served by granting the [TRO].

*Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008) (quoting *Northeast Ohio Coalition for the Homeless v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006)). "Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir. 2000). Additionally, "harm is not irreparable if it is fully compensable by money damages." *Basicomputer Corp. v. Scott*,

973 F.2d 507, 511 (6th Cir. 1992).

At this juncture, the municipalities' motion for a TRO will be denied, based on the limited likelihood that the municipalities will succeed on the merits of their claims, and the lack of potentially irreparable harm. While the limited likelihood of success on the merits is arguably the more significant of the two factors, the two factors combined are dispositive of the municipalities' motion for a TRO. Based on this conclusion, and the fact that Charter intends to implement its plan on tomorrow's date, the Court will decline an express discussion of the other factors and only issue a brief opinion.

With respect to the municipalities' likelihood of success on the merits, it is significant that the franchise agreements do not expressly designate the channels that must be used for PEG programming. Rather, the agreements provide that Charter is required to make a certain number of channels available for PEG use. Unlike the franchise agreements at issue in *City of Dearborn v. Comcast of Michigan III, Inc.*, 558 F. Supp. 2d 750 (E.D. Mich. 2008) (order granting TRO), the franchise agreements at issue in this case do not contain provisions preventing Charter from relocating PEG channels without authorization from the local government. Indeed, the agreements appear to contemplate a change in designated channels upon completion of a "system rebuild," in order to promote uniformity across localities. *See* Pl. Br. Ex. H ("Upon the completion of the System rebuild, the Grantee shall make reasonable effort to assure the common designation of access channels through the Franchise Area."). Additionally, the municipalities' argument that relocation of the PEG channels amounts to exercise of "editorial control" as prohibited by 47 U.S.C. § 531(e), has been rejected by another court in this district under similar circumstances. *See City of Dearborn v. Comcast of Michigan III, Inc.*, No. 08-10156, 2008 WL 4534167 (E.D. Mich. Oct. 3, 2008), as

amended 2008 WL 5000039 (Nov. 25 2008).

With respect to irreparable harm, the municipalities emphasize two main concerns. First, the municipalities emphasize that two of the channels (96 and 97) that Charter intends to designate for PEG use are subject to significant interference from FM radio stations. However, according to Charter, upon receiving the list of locations where the municipalities identified significant interference, Charter performed tests at those locations and other random locations. Charter submitted a declaration in which a certified broadband communications engineer states that the type of problem encountered is quickly and easily remedied. *See* [Dkt. # 8] (declaration of K. Hayes). While the municipalities contend that there is no "use now, correct later" principle under federal law, the municipalities have not explained how the harm caused by such conduct is not compensable through monetary damages. Second, the municipalities emphasize that they stand to lose the benefits of the efforts that they have put into "branding" the current PEG channels. Yet, similar to the interference problem, the municipalities have not explained how the problem of lost "branding" efforts, even if it is a compensable proprietary interest of the municipalities, cannot be compensated through monetary damages.

Accordingly, it is **ORDERED** that Plaintiff's motion for temporary restraining order [Dkt. # 2] is **DENIED**.

It is further **ORDERED** that an in person status conference is **SCHEDULED** for **December 15, 2009, at 9:00 a.m.**

s/Thomas L. Ludington  
THOMAS L. LUDINGTON  
United States District Judge

Dated: November 30, 2009

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 30, 2009.

        s/Tracy A. Jacobs
        TRACY A. JACOBS